Please proceed. Thank you, Your Honor. Good morning. I'm Elizabeth Fleming on behalf of the appellant, Otagus Coverson. Welcome to Alaska. I want to begin with saying that what Otagus Coverson wants here is not really so very much but an opportunity to plead with a court on the record for a chance to die with his family. He never had that opportunity in this case because he was subject to the imposition of a mandatory minimum sentence of life without parole. Is there anything we can do, given our case law, that this three-judge panel can do? Your Honor, it's my argument that this three-judge panel has the power to read the precedents that, as I have outlined them in my brief, and decide that Harmelin is old law and is no longer controlling. And I remind you that in constitutional jurisprudence, stare decisis is of less value, as stated by the court in Harmelin. But our problem is that that may be true as to the Supreme Court. And this may be a pretty effective case to try and get the court to rethink what they've said. But that doesn't insulate us from having to follow the Supreme Court. I understand that, Your Honor, and I do understand. I'm not trying to ignore the Ninth Circuit precedent that is very clear about this. Can I just back up one minute? Sure. I gather that whether to file the priors was a discretionary decision by the U.S. Attorney. Yes, Your Honor. And just as a matter of practice, I gather that in some districts it isn't done, but it seems to be, and we have at least one other such case on the calendar here. So is it done here regularly or what? Your Honor. I'm sorry, I don't understand. I'm sorry? Is what done regularly? The, what is it, 851 notice? 851 notice, Your Honor. Right, right. Your Honor, it does vary. My practice was in the Eastern District of Michigan. When I was an assistant U.S. Attorney, we did not regularly file. I can't have the Northern District of California, it doesn't work. And for that matter. Central does all the time. Central California does on some of these. And that is the most of my drug work. A lot of softy AUSAs in Northern District of California. I asked the public. I was at a panel with the public defenders the other day and they asked me, said they don't see them. They don't see them? Oh. Which is just another. This is where your client should have committed this crime. He should have committed this crime in Northern California. But it is a time of discussion, Mary, and that decision I'm revealed. When the AUSA proffers a priors, the district judge has no choice but to consider any challenges. I mean, sometimes you can challenge a priors, but I take it there were six of them here, right? Well, there were six, Your Honor, and there were three were juveniles. So even if you. I'm just saying even if you could pick away at some of them, you're still left with. All you need is two, right? All you need is two. One gets you to 20 years. Exactly. I had one of those many years ago. I actually saw the guy come out after 20 years. He wasn't the same guy. And I don't think there's any. I think if you've read the briefs and the excerpts, my client would be unlikely to get less than 20 years, even if he had an opportunity to argue his own case. And I wish I had a better client to make this argument with. But he is still a human being. And, yes, I agree the district judge has to do this unless the district judge, as well as this panel, says, wait just a minute. The Eighth Amendment guarantees of liberty and freedom do not allow us to do this in this case. How should we take Miller v. Alabama, which seems to reemphasize Harmelin as being still good law? Well, I think that's a misreading, Your Honor, of Miller, in that I think Miller is really more representative of the fact that we are moving toward a different jurisprudence with regard to the Eighth Amendment. In Miller, for the first time, the court said, wait just a minute. Death is no longer different. In Miller, this is when life without parole is given a review. Harmelin, Miller's only distinction is that Harmelin was a grown-up and Miller was a juvenile. Right, and it says Harmelin is different because it has nothing to do with juveniles. And so it seems to reinforce the continued viability of Harmelin, which would be applicable here. Your Honor, I can see how you can read it that way, but if you look at it in the context of the number of other reversals in the Eighth Amendment context that the Supreme Court has performed over the last 10 years, most recently in the Allend case just a couple of weeks ago, then it is clear that Harmelin is simply a relic of an earlier and long-ago time. Let's say we got past the problem we have, which is that we're bound by Supreme Court precedent. What are the policy implications? We couldn't just do it for your client. Let's say we're free to go back. Essentially, we would have to say that any federal and presumably any state statute that imposes life for a crime, for a non-homicide crime is unconstitutional. There's no narrow way of coming to reaching the result you want us to reach without doing a fair amount of damage or cutting out a lot of loss. Well, you're absolutely right, Your Honor. I know you wouldn't be unhappy about that. No, I'm recognizing that this is a policy matter. The Eighth Amendment is a policy matter. That's what makes these issues so difficult. But what I'm saying is you don't have a narrower argument, something that would apply to a narrower class of people. We would essentially have to say if the crime did not involve homicide, then Congress and the state court, the state legislatures, have no authority to impose a life sentence. Is that what we'd have to hold? I think that for my client, you could go as far as saying if the crime doesn't involve violence against another human being. Nor did the priors. Is that right? Or did the priors? Well, we've got some priors there. I mean, but the priors that are relevant to this. The priors relevant to this, there is one of the priors that does involve a crime of violence, Your Honor. What was that? I believe it was there's involuntary manslaughter. The priors don't have to be drug priors for the 851? I don't think so. I mean, I think the whole what we're looking at. What I'm asking you is what does the statute require as the priors? The statute requires either drug crimes or crimes of violence. Okay. But ultimately it only applies to the current crime that has to be addressed. The current crime, as noticed and sentenced, is a 21 U.S.C. crime, a drug crime. And is required to be. Yes, Your Honor. I see. Yes, Your Honor. I see. But the priors can be any violent or any drug crime, felony level. I see. Thank you. Okay. Thank you. I'll reserve the rest of my time for rebuttal. Good morning, Your Honors. I'm Kim Sayers Faye, and I represent the United States. This case isn't about Miller. Miller was, as Judge Acuda mentioned, very explicitly cabined to juvenile offenders. I mean, Justice Kagan couldn't have made that opinion more replete with references to juvenile offenders and the specific rationale that applies to juvenile offenders, meaning that their mental capacities, their maturity is not there. Do you know, I gather that the Attorney General gave a speech the other day about mandatory minimums. He did. Was his speech essentially that these charges like this won't be filed in the future? No. I've read the memo, of course. And what it says with regard to 851s I think is very consistent with what we did here. It really says do not be an automaton. Use your brain. Use your discretion. And the discretion is inherent in the statute. We did use that here. In fact, I did not file the 851 in the first instance. But what the Attorney General's specific guidance is, is that we should decline to file the information pursuant to 21 U.S.C. 851 unless certain circumstances are met. Among those are the defender's criminal history. And here you have a really robust criminal history. He had 20 criminal cases. He had a Dutch British one. It wasn't that impressed. He wasn't, and I guess therein we're just going to have to agree to disagree. This man killed somebody. He killed somebody. He has a manslaughter conviction. I see nothing about involuntary. I don't remember seeing any details about a manslaughter conviction. Maybe it was in there. I have the PSR, and I could refer you to that. I mean, there are manslaughter convictions and manslaughter convictions. There's vehicular manslaughter. No, it wasn't a vehicular manslaughter, Your Honor. I'm just wondering. Sure. The PSR is docket 331. It appears in paragraph 63 on page 16. Manslaughter in the first degree. According to court documents, on March 28, 1993, at 2 a.m., outside the Renaissance Club as a crowd gathered, a defendant who had not been inside the club approached three different people carrying a gun and began firing. One ran away. On the way to the hospital, the vehicle was stopped by police who took control of the gun and called for an ambulance for the wounded person who died. So he has a violent conviction. He was tried and convicted of manslaughter. And he served time for that? He did. He did. It looks like probation was revoked many times, so it's hard to figure out exactly how many years. But, yes, he served a number of years for that manslaughter. And he also has six prior drug felony convictions. And because Your Honor asked, I want to set the record straight. 851 doesn't have anything to do with the manslaughter conviction. 851 is a drug statute. To be eligible for enhanced penalties under that drug recidivist statute, you have to have prior drug felony convictions. That's what I thought. I think what we're conflating there is the career offender. He was also a career offender by virtue of which his offense level under the guidelines was automatic. Right, but that's not the mandatory minimum. Right. The mandatory minimum derived from the 851. So in that sense, the manslaughter conviction is really not pertinent to the 851. That's correct. The 851 is based on the current. You started arguing about it. But it's really not pertinent to the 851. It isn't the reason you have a mandatory minimum. Right. The mandatory minimum derives from the drug felonies. The Attorney General's guidance. I thought you were explaining why you exercise discretion. Absolutely. The Attorney General's guidance directs me now, and I believe common sense directed me then, to consider the man's criminal history. How much of a danger is he? What are the penological justifications here? And although we try to avoid them at some point, there is no further justification for it. And we do file 851s in this district. We do so judiciously. We do use our heads. We don't use it just as an automaton. You have prior convictions. The man walks in the door with six, therefore automatically file. That is not our practice. But this was a person who went to trial. This was a person who, frankly, we tried very hard to keep him in his deal that would have prevented this happening. Well, he was not accepting responsibility. And to my mind that's... Well, it sounds like you're using it as a plea bargaining device, essentially. Well, under this court's jurisprudence, I am entitled to do that. But we do in this circuit, or excuse me, in this district, whether one goes to trial, whether one, for example, does not file any motions and you do immediately to accept responsibility, does influence our judgment about whether we file the 851. In this case, we did it, frankly, after a lot of circumspection, and it wasn't my personal decision. It was a consensus decision. It was a very important decision. It's not one we took lightly. But I think it was appropriate, and I think the outcome, frankly, is just in this case, although he could have avoided it.  He did. He did, Your Honor. He had a plea offer, a C plea, which is a plea that binds the court if the court accepts the agreement, 22 to 27 years. He honored that agreement for some time, and then as we cruised towards sentencing, he asked to withdraw from that. There was a contested evidentiary hearing, which lasted, I believe, two days, at which I fought very hard to show that I don't believe that there was justification. He was saying that medication impaired his judgment. He jumped out a window and he was caught with the cocaine, injuring his back. He was on medication for several months. He argued that the medication that he was on impaired his judgment to consider the plea agreement that he considered for many months. The court thought there was value in that and allowed him out of his plea agreement, even though at that hearing I very explicitly warned him that withdrawing from the plea agreement would be a poor judgment for him, and from the government's perspective, the best thing we could have done was lose that motion. I said to him, Sir, you understand that if I lose this motion and you are allowed to withdraw your plea, I will file the 851. If you go to trial and are convicted, you will get life without parole. He said, I understand.  And he understood what we were going to do so he could comport himself accordingly, and he just made a gamble that didn't pay off. Thank you. Thank you. I stand corrected. As far as I knew, I was confusing the two. But let me just say this. He's being sentenced in this case for a pure drug offense, a pure drug offense. And if he withdrew his plea, that is really apropos of nothing here today, except that he exercised his constitutional right to be tried. And just like everything else about sentencing guidelines and 5K1.1 reductions, the only way defendants can possibly ever get out of jail is if they plead guilty and accede to the demands of the Justice Department when they come up into the federal system. Well, if they have six prior felony drug convictions, they do do something along the way to help themselves get there. It's not like he's an innocent bystander. No, he is not, Your Honor. But no matter how bad of a human being he may be, he is entitled to the constitutional protections of a fair and public trial. And that is what those are his options that he exercised in this case. Sometimes we live with consequences. I do understand that, Your Honor. He is still a human being, and all we are asking is an opportunity for him to plead for his life. After all that we have gone through, evidentiary hearings, et cetera, he never had a chance to say he's got a mother and a wife and children. Thank you. Thank you. The case is filed. You will stand some minutes.
judges: Kozinski, Berzon, Ikuta